UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BENNETT,

    Petitioner,

                                      Case No. 09-12054

v.

                                      Honorable Patrick J. Duggan

MICHAEL CURLEY,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Timothy Bennett ("Petitioner"), a state prisoner currently confined at the Michigan Department of Corrections Intensive Re-entry Facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for assault with intent to do great bodily harm less than murder, Michigan Compiled Laws § 750.84, discharge of a firearm toward a dwelling, Michigan Compiled Laws § 750.234b, and felony-firearm, Michigan Compiled Laws § 750.227b. Petitioner is currently serving concurrent sentences of four to ten years' imprisonment for the assault conviction and eighteen months to four years for the discharge of a firearm conviction, consecutive to the mandatory two-year sentence for felony-firearm. For reasons set forth below, the Court denies the petition and declines to issue a certificate of appealability.

### I. Background

This case arises from an incident that occurred in Detroit, Michigan on May 5, 2006.

Petitioner and Nico Durant engaged in an altercation, and while Durant was pinned to the ground, Petitioner fired a weapon at him. No one was killed. Petitioner was subsequently charged with assault with intent to commit murder, felonious assault, discharge of a firearm at a dwelling, malicious destruction of property, and felony-firearm. Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of assault with intent to do great bodily harm less than murder, discharge of a firearm toward a dwelling, and felony-firearm. He was acquitted of the remaining charges. The Court finds the following testimony pertinent to the case.

Durant was first to testify. He testified that on the day in question, he had heard his friend, Michael Parks, arguing with Petitioner on the front porch of Parks' house. Durant walked between Parks and Petitioner and went to his car, which was in the driveway. He opened the passenger door and sat down, holding the door open with his foot. Petitioner approached him and pushed him, stating, "[Y]ou think you tough, don't you?" Trial Tr. vol. I, 52, Aug. 28, 2006. Durant exited the car to defend himself. He said that he and Petitioner then fought, and Petitioner pinned him on the ground. While on top of him, Petitioner yelled to a friend, Adrian Evans, "[H]urry up, AJ, pass me the gun." Trial Tr. vol. I, 54. Evans passed the gun to Petitioner and Petitioner pointed it at Durant's head. Durant managed to grab the barrel of the gun and move it so that when Petitioner pulled the trigger, the shot went over his right shoulder.

After the gun went off, Durant's friends came over to help him. He said he struck Petitioner and managed to run away. Trial Tr. vol. I, 58. He testified that he heard two more shots after he left the scene. He said he went to the next block and checked himself

for injuries, and determined that he was not injured.  He still heard arguing, so he returned to the scene.  Durant saw that the windows in his car had been smashed.  Durant testified that he did not see Petitioner or Evans, but his friends were standing outside the house.  Trial Tr. vol. I, 62-63.

Afterward, Durant walked to a nearby store with Tiffany Miller, his daughter's mother.  There, they saw Petitioner and Evans.  Durant testified that neither of them approached him.  Durant went outside and found some police officers, who soon apprehended Petitioner.  Durant said that he gave a written statement to the police.

Michael Parks testified next.  He testified that he was sitting on his front porch when Petitioner came down the street.  He said Petitioner "went crazy," and started "tearing up" his porch.  Trial Tr. vol. I, 96.  He further testified that Petitioner and Durant got into an altercation.  He saw Evans come into the street with a gun in his hand.  Shots were fired.  He ran into the house but saw Evans shoot at the porch, where his brother, Martin Parks, Jr., and Henry Goodloe were standing.  Martin was grazed by a bullet, and he and Henry ran into the house.  Petitioner fired at the house until he was out of bullets.  There were gunshot holes in the porch awning and the front porch light, and the screen door was shattered.

The next witness to testify was Martin Parks, Jr.  He said he saw two men walking down the street while he was sitting on the porch with his brother and Goodloe.  He identified Petitioner as one of the men.  Petitioner started "talking crazy" and "pulling the rails" of the front porch.  Trial Tr. vol. I, 124.  According to Martin, Durant went to his car and sat in it.  He said the other man pulled a gun and shot a few times in the air.  Petitioner

walked up to the car and pushed Durant. Durant got out of the car and they began fighting. Martin testified that Durant and Petitioner were tussling with the gun and then Petitioner got the gun and fired at Durant a few times while he was still on the ground. Trial Tr. vol. I, 127-28. Durant then disappeared. Martin testified that he went into the house, where he realized that he had been shot. Trial Tr. vol. I, 131. He did not seek medical attention.

Henry Goodloe testified next. He said that he was on the porch with the Parks brothers and Durant when Petitioner walked by the house. According to him, Petitioner "went ballistic." Trial Tr. vol. I, 147. Durant went to his car while the others remained on the porch. Evans approached, brandishing a gun. Goodloe said Durant and Petitioner started fighting. Petitioner was on top of Durant when he asked Evans for the gun. Then Petitioner swung the gun toward Durant and it went off. Trial Tr. vol. I, 153. Goodloe testified that he ran into the house at that point.

The officer who responded to the scene, Detroit Police Officer Jermaine Owens, testified that when he arrived at the scene, he saw a car that had been shot up. Trial Tr. vol. I, 195. The scene was chaotic, with a lot of people outside. Someone identified Petitioner as the shooter. Officer Owens said Petitioner then took off running. He ran after him. Petitioner was later caught and arrested. Officer Owens testified that he did not find a gun on Petitioner when he was arrested. Trial Tr. vol. I, 204.

The defense did not present any witnesses. Petitioner was subsequently convicted of assault with intent to do great bodily harm less than murder, discharge of a firearm toward a dwelling, and felony-firearm. Petitioner was acquitted of the remaining charges. On

4

September 7, 2006, he was sentenced to concurrent prison terms of five to ten years for assault and thirty months to four years for discharge of a weapon, to be served following the mandatory two-year prison term for the felony-firearm conviction.

Following his sentencing, Petitioner filed his direct appeal with the Michigan Court of Appeals, raising the following claims: (1) there was insufficient evidence to support his convictions; (2) the jury's verdict was against the weight of the evidence; (3) his attorney was ineffective for failing to call him as a witness; (4) the trial court erred in denying his motion for a directed verdict on the charge of assault with intent to commit murder and granting the prosecutor's motion to add a lesser-included offense; and (5) his sentence was based on incorrectly scored guidelines.

While his appeal was pending, on March 8, 2007, Petitioner filed a motion for a new trial and a motion for resentencing. A hearing was held on April 3, 2007. The trial court denied Petitioner's motion for a new trial but granted his request for resentencing. On May 1, 2007, the trial court resentenced Petitioner to concurrent prison terms of four to ten years for assault and eighteen months to four years for discharge of a firearm. Petitioner's sentence for his felony-firearm conviction did not change.

On December 18, 2007, the Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Bennett*, No. 273236, 2007 WL 4410045, at *4 (Mich. Ct. App. Dec. 18, 2007) (per curiam). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising the same claims raised in the Court of Appeals, plus an additional claim that counsel was ineffective for failing to interview and call Adrian Evans as a witness. The Michigan Supreme Court denied his application on May 27, 2008.

*People v. Bennett*, 481 Mich. 877, 748 N.W.2d 849 (Mich. 2008).

Petitioner did not file a motion for relief from judgment with the state trial court or a petition for a writ of certiorari with the United States Supreme Court. Instead, on May 27, 2009, he filed this habeas petition. In the petition, Petitioner raises the following claims: (1) there was insufficient evidence to support his convictions; (2) the jury's verdict was against the weight of the evidence; (3) trial counsel was ineffective for failing to call him to testify; (4) the trial court erred in denying his motion for a directed verdict on the charge of assault with intent to commit murder and granting the prosecutor's motion to add a lesser-included offense; (5) his sentence was based on incorrectly scored guidelines; and (6) trial counsel was ineffective for failing to interview and call Adrian Evans to testify at trial.

## II. Standard of Review

Federal statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S. Ct. at 1521. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ----, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 2067 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a

7

'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citation omitted). "[R]eadiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24, 123 S. Ct. at 360. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

**A. Insufficient Evidence**

In his first claim, Petitioner argues that there was insufficient evidence to support his convictions, particularly with respect to the element of intent. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970).

"A district court may grant a writ of habeas corpus based on insufficiency of the evidence only where it finds that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Id.* (quoting *Jackson*, 443 U.S. at 324 n.16,

8

99 S. Ct. at 2792 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id.* at 788-89 (citing *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000)).

With respect to Petitioner's conviction for assault with intent to do great bodily harm less than murder, the Michigan Court of Appeals outlined the elements of the offense as follows: "'(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.'" *Bennett*, 2007 WL 4410045, at *1 (quoting *People v. Parcha*, 227 Mich. App. 236, 239, 575 N.W.2d 316, 318 (Mich. Ct. App. 1997)). The Court of Appeals found sufficient evidence to support Petitioner's conviction, reasoning:

> Here, the evidence would allow a rational trier of fact to find the elements of assault with intent to do great bodily harm beyond a reasonable doubt. Various witnesses indicated that defendant and the victim engaged in an altercation, and while the victim was pinned to the ground, defendant requested a gun, which was handed to him. The victim testified that he grabbed the barrel of the gun and, while he and defendant were tussling over it, the gun went off, firing a shot above and to the side of the victim's head. One witness testified that defendant fired the gun at the victim during the struggle, and another testified that he fired it while merely swinging the pistol at the victim. No matter which version of the episode is adopted, defendant's assault with the pistol raises the legitimate inference that he intended to do the victim great bodily harm.

*Id.*

With respect to Petitioner's conviction for discharging a weapon at a dwelling, the

9

Michigan Court of Appeals outlined the elements of the offense as follows: "Anyone who 'intentionally discharges a firearm at a facility that he or she knows or has reason to believe is a dwelling or an occupied structure' is guilty of the crime.'" *Id.* (quoting Michigan Compiled Laws § 750.234b(1)). The court found sufficient evidence to support Petitioner's conviction:

> Here, the structure was undeniably a house, and various witnesses testified that individuals had fled inside during the relevant sequence of events that encompassed defendant's act of firing shots at the building. When the resident of the home emerged, he noticed that the screen door was shattered and the porch light was out. A neighbor testified that she saw defendant and another individual fire at the house, handing a gun back and forth. On appeal, defendant argues that the testimony of the neighbor is inconsistent with the testimony of other witnesses and should be disregarded. However, this Court will not interfere with the jury's role of determining the weight of the evidence or the credibility of the witnesses. Therefore, the prosecutor presented sufficient evidence to support defendant's conviction of discharging a weapon at a dwelling or occupied structure.

*Id.* (citations omitted).

The facts relied upon by the state court to support Petitioner's convictions, which are based upon the trial testimony of the victim and other witnesses, must be presumed correct on habeas review. 28 U.S.C. § 2254(e). Petitioner points to contradictory trial testimony that he contends challenges those facts. *Jackson*, however, required the Court of Appeals to consider the evidence in a light most favorable to the prosecution. Viewed in such a light, the evidence was certainly sufficient to find the elements of each offense beyond a reasonable doubt. Testimony at trial indicated that Petitioner fired a weapon at Durant and at the Parks home. Accordingly, the decision of the Michigan Court of Appeals was neither contrary to nor an unreasonable application of Supreme Court precedent. It was

also not based upon an unreasonable determination of the facts. Habeas relief is not warranted with respect to Petitioner's claim of insufficient evidence.

### B. Verdict Against the Weight of the Evidence

Petitioner claims that the jury's verdict was against the weight of the evidence. This is a state-law argument, and thus, it cannot be addressed by a federal habeas court. *See Nash v. Eberlin*, 258 F. App'x 761, 765 n.4 (6th Cir. 2007); *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004) ("A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence."). "Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised." *Cukaj*, 305 F. Supp. 2d at 796. The Court has concluded above that this is not the case, and therefore denies habeas relief with respect to this claim.

### C. Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective for: (1) failing to allow him to testify; and (2) failing to interview and call Adrian Evans as a witness to testify. To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two-prong test. First, he must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. at 689, 104 S. Ct. at 2065. In other words,

Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Second, Petitioner must show that the deficient performance prejudiced his defense. *Id.* at 687, 104 S. Ct. at 2064. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792. Petitioner bears the burden of demonstrating a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *Wong v. Belmontes*, --- U.S. ----, 130 S. Ct. 383, 390-91 (2009).

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable - a substantially higher threshold.'" *Knowles v. Mirzayance*, --- U.S. ----, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)). The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable, not whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 131 S. Ct. at 785. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Alvarado*, 541 U.S. at 664, 124 S. Ct. at 2149 (2004)). Thus, a "doubly deferential judicial review" applies to *Strickland* claims brought by

12

habeas petitioners. *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003)). This means that on habeas review of a state-court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "'Surmounting *Strickland*'s high bar is never an easy task.'" *Id.* at 788 (quoting *Padilla v. Kentucky*, --- U.S. ----, 130 S. Ct. 1473, 1485 (2010)).

The Michigan Court of Appeals rejected Petitioner's claim that his counsel was ineffective for failing to call him to testify. The court noted that the trial court found Petitioner's assertion that he wanted to testify "unpersuasive, and quite frankly, not credible." *Bennett*, 2007 WL 4410045, at *2. The court further noted that nothing in the record indicated Petitioner's supposed desire to testify, and Petitioner had not indicated at sentencing that he was denied an opportunity to testify. *Id.*

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000). A federal court sitting in habeas review should entertain "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (citing *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)). To overcome this presumption, the petitioner must present record evidence that he somehow alerted the trial court to his or her desire to testify. *Id.* Because the record is devoid of any indication that Petitioner disagreed with counsel's advice that he should not testify, he has failed to overcome the presumption that he willingly agreed to counsel's advice and that this advice

was reasonable.

Moreover, Petitioner has failed to show that he was prejudiced by counsel's advice concerning whether he should testify. In the affidavit attached to his brief, Petitioner has stated that he would have testified at trial, but provides no details concerning his proposed testimony other than that he is not guilty and was hit from behind. This is insufficient to establish prejudice concerning counsel's allegedly deficient advice not to testify. *See id.* at 641 (defendant did not demonstrate prejudice from defense counsel's alleged impairment of his right to testify where he did not provide details about the substance of his testimony and merely speculated that his testimony would have had an impact on the jury's view of certain witnesses' credibility and his involvement in the crime). The Court concludes that Petitioner is not entitled to habeas relief on this claim.

Petitioner next claims that his counsel was ineffective for failing to interview and call Adrian Evans as a witness. Respondent argues that this claim is unexhausted because Petitioner raised it for the first time in his application for leave to appeal to the Michigan Supreme Court. The Court, however, is not required to address the exhaustion issue where the merits of the claim are easily resolved against the petitioner. 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997).

"Under *Strickland*, [it is presumed] that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003). Such decisions, of course, must be reasonable. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The failure to call witnesses or present other evidence may constitute ineffective assistance where it deprives the defendant of a

14

substantial defense. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Counsel may be deficient for failing to call witnesses whose testimony would corroborate the defendant's version of events, if such evidence is not merely cumulative. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 358-59 (6th Cir. 2007) (ruling that testimony of two alibi witnesses was not cumulative to the defendant's own testimony); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992) (finding ineffective assistance of counsel based on counsel's failure to interview witnesses who would corroborate the defendant's account of events).

In this case, however, the record belies Petitioner's argument. While the affidavit signed by Evans claims that Petitioner was never in possession of a firearm and did not discharge it, the affidavit itself is suspect. The affidavit is dated December 21, 2007, more than a year after Petitioner was convicted and sentenced. Petitioner did not raise his claim with respect to this allegedly exculpatory evidence in his motion for new trial or on direct appeal. It is difficult to account for Petitioner's failure to present this evidence earlier in the proceeding. Moreover, nothing in the record indicates that counsel failed to interview or investigate Evans, or that he failed to consider whether Evans' testimony would have benefited Petitioner. Absent evidence to the contrary, it is presumed that the assistance provided by Petitioner's counsel was reasonable. Furthermore, Petitioner has failed to establish a reasonable probability that the jury's verdict would have been different had Evans testified. Several witnesses testified that Petitioner fired the weapon, decreasing the likelihood that the jury would have chosen to believe Evans' account instead. The Court concludes that Petitioner is not entitled to habeas relief on his claims of ineffective

15

assistance of counsel.

**D. Motions for Directed Verdict and to Add a Lesser-Included Offense**

Petitioner contends that the trial court erred in denying his motion for a directed verdict and in granting the prosecutor's motion to add a charge for the lesser-included offense of assault with intent to do great bodily harm. The determination of whether the state court erred in failing to grant a directed verdict is an issue of state law that cannot be raised on habeas review. *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001). As for the decision to add the lesser-included offense, this is also a question of state law that cannot be reviewed by this Court. *See People v. Adams*, 202 Mich. App. 385, 386-89, 509 N.W.2d 530, 531-32 (Mich. Ct. App. 1993).

**E. Scoring Under the Sentencing Guidelines**

Petitioner asserts that he is entitled to resentencing because Offense Variables 1 and 14 of Michigan's sentencing guidelines were scored inaccurately. Again, this claim is not cognizable on federal habeas review because it is a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.") (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991).

Petitioner also argues that his sentence was disproportionate. The United States Constitution does not require that all sentences be proportionate. "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*,

16

501 U.S. 957, 1001, 111 S. Ct. 2680, 2705 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288, 103 S. Ct. 3001, 3008 (1983)). It is for this reason that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S. Ct. 1133, 1138 (1980). "Federal courts will therefore generally not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole." *Friday v. Pitcher*, 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002) (citing *Seeger v. Straub*, 29 F. Supp. 2d 385, 392 (E.D. Mich. 1998)). Petitioner is currently serving concurrent sentences of four to ten years for assault with intent to do great bodily harm and eighteen months to four years for discharge of a firearm, consecutive to a two-year sentence for felony-firearm. His sentences are not so grossly disproportionate that they violate the United States Constitution. Petitioner has failed to present a cognizable habeas claim.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S. Ct. at 1034 (2003). The Court does not believe that jurists of reason would debate the Court's resolution of Petitioner's claims. The Court concludes

that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and therefore declines to issue Petitioner a certificate of appealability.

## V. Conclusion

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief.

Accordingly,

**IT IS ORDERED**, that Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Date: May 3, 2012
Copies to:

Sanford A. Schulman, Esq.
Andrea M. Christensen, A.A.G.